```
                  UNITED STATES DISTRICT COURT
                   DISTRICT OF MASSACHUSETTS
_____
                              )
UNITED STATES OF AMERICA      )
                              )
        v.                    )   Crim. No. 04-CR-10248-RCL
                              )
CHRISTOPHER ALVITI            )
_____)
```

## SENTENCING MEMORANDUM OF THE UNITED STATES

The United States of America, by its attorneys, United States Attorney Michael J. Sullivan, and Assistant U. S. Attorney David G. Tobin, hereby files with the Honorable Court a sentencing memorandum in the above-referenced case for the use of the Court in determining an appropriate sentence for Christopher Alviti (Alviti).

## Background

On June 6, 2004, Alviti was arrested pursuant to a warrant issued by United States Magistrate Judge Charles B. Swartwood. Alviti appeared before the Court on the same day and was temporarily detained. On July 2, 2004, Alviti appeared in U.S. District Court and was released on a $25,000 unsecured bond with conditions. On August 18, 2004, a federal grand jury in Boston, Massachusetts returned a seven-count indictment charging Alviti and Richard Gould (Gould)with Conspiracy to Possess with Intent to Distribute, and to Distribute, Oxycodone in violation of 21 U.S.C. § 846 (count one). Alviti was also charged in counts two through six with Distribution of OxyCodone in violation of 18

U.S.C. § 841(a)(1).  On June 1, 2005, Alviti appeared before this Honorable Court and pled guilty to counts one through six pursuant to a plea agreement he entered into with the United States.  Alviti's sentencing is scheduled for August 24, 2006.

## **Plea Agreement**

In paragraph 3 [Sentencing Guidelines] of the Plea Agreement [a copy of which was filed under seal with the Court], the United States and Alviti agreed to take the position that Alviti is "responsible for the equivalent of 1,000 - 3,000 kilograms of marijuana and that his Base Offense Level is 32."  In paragraph 7a [Terms of Cooperation] of The Plea Agreement, Alviti agreed to "cooperate fully with law enforcement agents and government attorneys ...[and] [i]f his testimony is requested, he must testify truthfully and completely before any grand jury, and at any hearing and trial."  Paragraph 13 [Breach of Agreement] of the Plea Agreement specifically states "[i]f the U.S. Attorney determines that Defendant has failed to comply with any provisions of this Agreement... the U.S. Attorney may, at his sole discretion, be released from his commitments under this Agreement in their entirety by notifying defendant, through counsel or otherwise, in writing."  Paragraph 13 further states "the U.S. Attorney will have the right to use against Defendant before any grand jury, at any trial or hearing, or for sentencing purposes, any statements which may be made by him... subsequent to this Agreement, without any limitation."

## **ALVITI'S BREACH OF THE PLEA AGREEMENT**

On July 18, 2006, the undersigned attorney for the government met with Alviti and Alviti's attorney, John LaChance, at the Office of the United States Attorney in Boston, Massachusetts.  The purpose of the meeting was to interview Alviti in anticipation of his testimony at the sentencing hearing for Gould, which at that time was scheduled for July 25, 2006. During the meeting, Alviti indicated he was unsure if he would honor the terms of the agreement and testify at Gould's sentencing hearing.  A day or two later the undersigned attorney for the government spoke with an assistant at Mr. LaChance's office and was informed that Alviti had decided not to testify at Gould's sentencing hearing.

On July 24, 2006, the undersigned attorney for the government sent by facsimile a letter to Mr. LaChance stating that the United States considered Alviti's refusal to testify at Gould's sentencing hearing as a breach of the Plea Agreement [a copy of the letter is attached and marked Enclosure I].  The letter further informed Mr. LaChance that the government would seek to have Alviti sentenced on the basis of 20,000 OxyContin tablets, the number of tablets acknowledged by Alviti at the July 18, 2006 meeting at the U.S. Attorney's Office.

### **Alviti's Admission to Approximately 20,000 Eighty Milligram OxyContin Tablets**

During the above-described July 18, 2006 meeting at the U.S. Attorney's Office, Alviti stated that for a period of two years

he received 200 OxyContin tablets approximately once a week from Gould. Alviti estimated that the total number of Oxycontin tablets he received from Gould was closer to 20,000 than to 30,000. A letter sent by the undersigned attorney for the United States to Gould's attorney, Scott Lopez, detailing the July 18, 2006 interview of Alviti is enclosed and marked as Enclosure II.

### **Presentence Report**

On November 9, 2005, U.S. Probation released the Presentence Report for Alviti. U.S. Probation appropriately determined that Alviti was responsible for all of the OxyContin he distributed to the undercover officer (See PSR Paragraph 39). The distributions to the undercover officer are the basis for counts two through six in the indictment. U.S. Probation also appropriately held Alviti responsible for the November 13 and 25, 2003 distributions to a cooperating witness, that were not charged in the indictment. These two distributions were appropriately considered relevant conduct (See PSR paragraph 39). U.S. Probation determined that Alviti's Base Offense Level (BOL) was 32 and that with a three level adjustment for acceptance of responsibility Alviti's Total Offense Level (TOL) was 29. Alviti's Criminal History Category (CHC) was determined to be I and his Guideline Sentencing Range (GSR) was determined to be 87 months to 108 months.

The United States did not file any objections to the Presentence Report and was satisfied that based on information

then known to and useable by the government the Presentence Report was correct.

### Government's Position On Alviti's Sentence

Alviti's breach of the Plea Agreement permits the government and this Court to use Alviti's post-Plea Agreement admission to determine the amount of oxycodone for which Alviti should be held responsible for sentencing purposes. As detailed above, during the July 28, 2006 meeting at the U.S. Attorney's Office Alviti acknowledged that he received approximately 20,000 eighty milligram OxyContin tablets from Gould over a two year period. Alviti's admission may be used by the Court in determining Alviti's sentence because the admission was made after Alviti executed the Plea Agreement and after Alviti's subsequent breach of the Plea Agreement [see paragraph 13 of the Plea agreement]. Twenty-thousand (20,000) eighty milligram OxyContin tablets results in a BOL of 36.[1]

### Acceptance of Responsibility

Alviti's offense level should be reduced by three level because of his acceptance of responsibility and timely guilty plea. As a result his adjusted offense level should be 33.

### "Safety Valve"

In the July 24, 2006 letter from the undersigned attorney

---

[1] 18656.72 eighty milligram OxyContin tablets results in a BOL of 36.

for the United States to Mr. LaChance, the United States stated: "Please be advised that the United States will object to a two level reduction pursuant to the "Safety Valve" provision of the Guidelines unless Mr. Alviti gives a complete proffer to the United states. Any statements made by Mr. Alviti during such a "Safety Valve" proffer may be taken into consideration by the Court in sentencing Mr. Alviti." As of this date, the undersigned attorney for the United states has not been contacted by Mr. LaChance to schedule a "Safety Valve" proffer.

### Government's Sentencing Recommendation

With a TOL of 33 and a CHC of I, Alviti's GSR is 135 months to 168 months. The United States respectfully recommends that this Honorable Court impose a sentence which includes a period of 184 months imprisonment. The United States believes the recommended sentence acknowledges the severity of Alviti's crimes and recognizes the assistance he provided in the arrest of Gould.

    Respectfully submitted,

    MICHAEL J. SULLIVAN
    United States Attorney

By: /s/ David G. Tobin
    DAVID G. TOBIN
    Assistant U.S. Attorney

Dated: August 11, 2006

CERTIFICATE OF SERVICE

I hereby certify that these documents filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) .

                              /s/ David G. Tobin
                              DAVID G. TOBIN
                              Assistant United States Attorney

Date: August 11, 2006



ENCLOSURE I

**U.S. Department of Justice**

*Michael J. Sullivan*
*United States Attorney*
*District of Massachusetts*

---

*Main Reception: (617) 748-3100*                                        *John Joseph Moakley United States Courthouse*
*1 Courthouse Way*
*Suite 9200*
*Boston, Massachusetts  02210*

July 27, 2006

**by facsimile**
John H. LaChance, Esquire
600 Worcester Road
 Suite 501
Framingham, MA 01701

      Re: United States v. Christopher Alviti

Dear Mr. LaChance:

      Pursuant to paragraph 13 of the Plea Agreement entered into by your client, Christopher Alviti, and the United States, please accept this letter as formal notice that the United States considers Mr. Alviti's refusal to testify at the sentencing hearing of Richard Gould as a breach of the Plea Agreement.  Paragraph 7a  of the Plea Agreement specifically states, "[i]f  his testimony is requested, he must testify truthfully and completely before any grand jury, and at any hearing and trial."  As you are aware, I met with you and Mr. Alviti at the U.S. Attorney's Office on July 18, 2006, to discuss Mr. Alviti's testimony at Mr. Gould's sentencing hearing then scheduled for July 25, 2006.  Mr. Alviti indicated that he was unsure if he would honor the terms of the agreement and testify at Mr. Gould's sentencing hearing.  I spoke with you secretary a day or two later and she informed me that Mr. Alviti had decided not to testify at Mr. Gould's sentencing hearing.  Mr. Gould's sentencing hearing has been rescheduled for September 20, 2006.  The United States reserves its right to all remedies specified in the Plea Agreement for a breach of the Plea Agreement as well as all rights that arise under applicable law.

      As a result of Mr. Alviti's breach of the Plea Agreement, the United States will ask the Court to sentence Mr. Alviti based on the admissions made by Mr. Alviti regarding the number of 80-milligram OxyContin tablets he received from Mr. Gould.  Paragraph 13 of the [lea Agreement specifically states, "Defendant understands that, should he breach any provision of this agreement, the U.S. Attorney will have the right to use against Defendant before any grand jury, at any trial or hearing, or for sentencing purposes, any statements which may be made by him, and any information, materials, documents or objects which may be provided by him to the

```
Mr. LaChance
July 24, 2006
Page 9
```

government subsequent to this agreement, without any limitation."  During the above-referenced July 18, 2006 meeting at the U.S. Attorney's Office, Mr. Alviti stated that the government's claim that Mr. Gould had provided him with approximately 30,000 OxyContin tablets was too high a number and that the actual number was closer to 20,000.  As a result of Mr. Alviti's admission, the United States will ask the Court to find that Mr. Alviti's Base Offense Level is 36.

      Please be advised that the United States will object to the a two level  "Safety Valve" reduction unless and until Mr. Alviti gives a complete proffer to the United States.  Any statements made by Mr. Alviti during such a "Safety Valve" proffer may be taken into consideration by the Court in sentencing Mr. Alviti.

      Thank you for your attention to these matters.

                                  Very truly yours,

                                  MICHAEL J. SULLIVAN
                                  United States Attorney

                By:     **Original Signed**
                          DAVID G. TOBIN
                          Assistant U.S. Attorney



ENCLOSURE II

**U.S. Department of Justice**

*Michael J. Sullivan*
*United States Attorney*
*District of Massachusetts*

---

*Main Reception: (617) 748-3100*     *John Joseph Moakley United States Courthouse*
*1 Courthouse Way*
*Suite 9200*
*Boston, Massachusetts  02210*

July 18, 2006

**by facsimile**
Scott P. Lopez, Esquire
24 School Street
8th Floor
Boston, MA 02108

      Re: United States v. Richard Gould
           Criminal No. 04-10248

Dear Mr. Lopez:

      Please be advised that the undersigned attorney for the United States interviewed Christopher Alviti today in anticipation of his testimony at the sentencing hearing of your client, Richard Gould, scheduled for July 25, 2006.  During the interview Mr. Alviti acknowledged that he has used marijuana, cocaine, OxyContin, Ecstacy, and mushrooms.  Mr. Alviti first used marijuana at about age sixteen and last used it about three years ago.  His marijuana use was very sporadic.  Mr. Alviti first used cocaine at about age twenty and last used it about three years ago.  Mr. Alviti used cocaine about once a month.  Mr. Alviti's cocaine use was limited to cocaine in powder form.  Mr. Alviti first used OxyContin at about age twenty or twenty-one and last used it about two-and-a-half to three years ago.  He used a couple of twenty-milligram pills each week, usually using one on both Friday and Saturday evenings.  Mr. Alviti used Ecstacy between the ages of sixteen and nineteen and estimates he used it on about twenty occasions.  Mr. Alviti used mushrooms twice at about age sixteen or seventeen.

      Mr. Alviti acknowledged selling marijuana, cocaine, and OxyContin.  Mr. Alviti first sold marijuana at about age seventeen or eighteen and sold small amounts of it off and on for a couple of years.  Mr. Alviti sold cocaine about once every few weeks between the ages of twenty and twenty-two.  He sold cocaine in gram and  "Eight Ball" quantities.  Mr. Alviti sold OxyContin for a couple of years between the ages of twenty and twenty-two.

      Mr. Alviti acknowledges having been arrested once prior to his arrest in this case.  The arrest for possession of marijuana occurred when Mr. Alviti was sixteen or seventeen.  The case was continued without a finding for six months.

Mr. Lopez
July 18, 2006
Page 11

      Mr. Alviti acknowledged that he has placed bets with "bookies" since he was seventeen. He last placed such a bet during this past football season.

      Mr. Alviti was shown a letter sent by the undersigned to U.S. Probation Officer Pamela J. Lombardini. The letter stated that Mr. Alviti had informed the government that Mr. Gould had made approximately 150 deliveries of OxyContin to him beginning in 2002 and that each delivery was for between 200 and 400 OxyContin tablets. The letter stated that the government seeks to have Mr. Gould held accountable for 30,000 eighty milligram OxyContin tablets. Mr. Alviti stated words to the effect that the 30,000 total was too high. Mr. Alviti went on to say that he received OxyContin approximately once a week for two years from Mr. Gould and that he received 200 tablets each time. Mr. Alviti indicated the number of tablets he received from Mr. Gould was closer to 20,000.

      Thank you for your attention to these matters.

      Very truly yours,

      MICHAEL J. SULLIVAN
      United States Attorney

By:   **Original Signed**
      DAVID G. TOBIN
      Assistant U.S. Attorney