UNITED STATES OF AMERICA
DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | CR. No.: 04-10248-RCL |
| | ) | |
| CHRISTOPHER ALVITI, | ) | |
|     Defendant | ) | |

**DEFENDANT'S SENTENCING MEMORANDUM**

**I.     Introduction**

Christopher Alviti is a 25 year old young man who became involved in distributing oxycodone to support a very bad gambling addiction. Mr. Alviti was arrested on June 29, 2004 at the end of a federal sting operation during which he sold the prescription drug to an undercover operative. He began to cooperate with the government immediately, giving up the identity of his source of supply and, at the direction of the government, ordering a quantity of oxycodone from his supplier. As a result of his affirmative actions, the government arrested and began prosecution of Richard Gould who became his co-defendant in this case. Also, as a result of his actions in securing Mr. Gould's arrest, Mr. Alviti's name was posted on the website www.whosarat.com as a government informant. During his release before trial, Mr. Alviti and some of his friends were attacked by a group of Mr. Gould's friends to punish him for being an informant.

After being extensively debriefed by the government, Mr. Alviti entered into a cooperation plea agreement on and entered a plea of guilty on June 1, 2005 and was placed on house arrest in lieu of incarceration pending sentencing due to concerns about his safety given the dissemination of his name as an informant over the internet.

After his plea of guilty was entered, Mr. Alviti's sentencing date was continued from time to time at the request of the government as Mr. Gould's prosecution dragged on. Mr. Gould pled guilty to the charges on January 30, 2006 but disputed the quantity of controlled substances for which he was accountable. Accordingly, the prosecutor reached out to Mr. Alviti and his counsel to tell them that if the quantity dispute was not resolved they would need Mr. Alviti to testify at Mr. Gould's sentencing hearing.

Mr. Alviti became quite concerned, not so much for his own safety but for the safety of his mother, and sister, who would remain in the community where Mr. Gould has family and associates. He became convinced that if he testified to the quantities which he had told the government about in his debriefings, thereby providing the basis for the increase in Mr. Gould's offense level, his mother and sister would be likely targets of retaliation and he would be unable to protect them because he would be in prison. At a meeting with the prosecutor, he spoke of his concerns and listened to what the prosecutor and counsel had to say. He took a couple of days to think matters over and then informed the prosecutor, through counsel, that he could not expose his family to danger and then not be present to defend them.

When his mother and sister became aware of his decision and the ramifications it would have at his sentencing, they pressed him to change his mind. After a number of meetings, their arguments prevailed. Counsel was notified that he was prepared to testify on Saturday, August 19, 2006. Counsel informed the prosecutor at 9:00 A.M. on Monday, August 21, 2006 of his willingness to testify and inquired whether that opportunity was still available to him so that he could complete his cooperation and earn a §5K1 departure.

The prosecutor stated that he wanted Mr. Alviti to be sentenced now. He would determine whether a Rule 35 request was appropriate based on Mr. Alviti's post sentence activity.

Mr. Alviti is now before this Court for sentencing and this memorandum is being submitted in order to assist the Court in determining a fair, just and reasonable sentence for him.

18 U.S.C. §3553(a) sets out, in broad terms, the factors which the Court should consider in arriving at an appropriate sentence – a fair sentence.  It also mandates that the Court impose a sentence sufficient but not greater than necessary to comply with the sentencing purposes set out in §3553(a)(2).

Under <u>United States v. Booker</u>, 343 US 220 (2005) and <u>United States v. Jiminez-Beltre,</u> 440 F3.d 514, (1st Cir 2006) the Court must begin with the sentencing guideline range calculated for the defendant. It is not, however, bound to impose a sentence within that range, where the defendant can point to facts and circumstances demonstrating that a lower sentence fits the fairness standard of <u>Booker</u>.

## <u>II.</u> <u>The Sentencing Guidelines</u>

Probation correctly calculated Mr. Alviti's offense level as 32 and his criminal history category as a I based upon the plea agreement and information about the offense to which they had access.

Probation also determined that Mr. Alviti met the first four (4) criteria in <u>U.S.S.G</u>. §5C1.2 for the "safety valve". This section provides for a two (2) level downward adjustment where all of its criteria are met. The remaining requirement which Mr. Alviti must satisfy in order to obtain the downward adjustment is the following:

"(5) Not later than the time of the sentencing hearing, the defendant has truthfully provided to the Government all information and evidence the defendant has concerning the offense . . . . "

Mr. Alviti has more than satisfied the fifth condition. He has been debriefed at length by the government concerning the offenses and his relationship with his co-defendant, Mr. Richard Gould. Such debriefings and interviews were conducted as recently as within the last month. At no time has the government ever suggested that the information he provided was either untrue or incomplete. If necessary to the Court's determination of whether the requirements of §5C1.2 (5) have been met, the Court should review the debriefing reports of Mr. Alviti to make its own determination.

Because §5C1.2 applies to Mr. Alviti his offense level should be reduced to level 30.

Mr. Alviti is also entitled to a three (3) level reduction for acceptance of responsibility pursuant to §3E1.1(a)&(b) since he immediately admitted his guilt, arranged for an undercover purchase from Mr. Gould and promptly pled guilty. That reduces Mr. Alviti offense level to a level 27. With a criminal history category of I his guideline range is 70-87 months.

The government seeks to use defendant's statements during his cooperation to enhance his relevant conduct and increase his offense level. They claim a right to do so by claiming that the defendant has breached is plea agreement by not completing his cooperation by testifying against his co-defendant at sentencing. Defendant submits that the cooperation clause of his agreement contains its own penalty for not cooperating to the extent the government believes necessary to obtain a 5K.1 motion: their refusal to file that motion. To hold that a failure to cooperate fully entitles the government to use the statements obtained from his cooperative efforts against him especially when it is the government which determines that there is more a defendant can do but will not do to assist the government is both unfair, contrary to a fair interpretation of the plea agreement and subject to abuse.

Here the defendant initially refused to testify after much deliberation and soul searching because of what he perceived to be danger to his family.

Having quickly reconsidered his position after pressure from those he sought to protect he stands willing to continue his cooperation and testify if necessary.

For these reasons, the Court should not consider the additional relevant conduct in calculating the guideline.

### III. Distinguishing Factors of this Case

Once the Court has calculated the correct advisory guideline sentence, the Court should examine the sentencing factors listed in 18 U.S.C. §3553(a) and determine whether defendant's individualized circumstance are such that a different sentence is warranted and should be imposed, a sentence that's

sufficient but not greater than necessary to comply with the sentencing purposes set out in §3553(a)(2). The fundamental duty of the Court is to impose a fair sentence individualized to the defendant while avoiding sentencing departures among similar situated defendants. 18 U.S.C. §3553(a)(6).

The circumstances of this case and this defendant warrant a sentence less than the advisory guideline because his post arrest conduct - cooperation for which the government declines to file a 5K.1 motion because it is not complete - exhibits both extraordinary acceptance of responsibility and rehabilitation far beyond that of the average defendant facing these charges. Defendant, at risk to himself for his cooperation, setting up his source of supply for a delivery of oxycodone which directly resulted in the arrest and conviction of a significant source of the drug on the North Shore. This resulted in his being posted as an informant on a national website: www.whosarat.com. *(See*, Exhibit A*)* The outing of his informant status creates a danger to him while in prison. The Court, under Booker has both the authority and, we contend, the obligation to consider the cooperation he has produces thus far in determining an appropriate sentence.

In addition, because of the pace at which his co-defendant's case had produced, defendant has spent the last year on house arrest. While he is grateful not to be in prison, he will not receive credit for the time spent confined to his uncle's home. Because this was an unusual arrangement set up to ensure his safety, defendant submits that the Court should consider the time he has spent in home confinement in determining a fair sentence for Mr. Alviti because home confinement fulfills a number of the §3353(a) sentencing factors, specifically including individual deterrence, punishment and rehabilitation. Defendant submits that imposing a sentence six (6) months less that the Court would otherwise impose would fairly reflect and take into consideration this factor.

### IV. Requested Sentence

Counsel and defendant submits that the fair and appropriate sentence for defendant in this case is a sentence of 48 months in the custody of the Bureau of Prisons, which is approximately a 30% reduction from the low end of the guidelines in this case.

Such a sentence will fulfill each of the sentencing criteria expressed in §3353(a), i.e.: seriousness of the offense, individual characteristics of the defendant, general deterrence, specific deterrence, punishment and rehabilitation and will encourage others to cooperate with the government even though the government ultimately determines that their cooperation does not justify a 5K.1 motion.

### V. Conclusion

For the foregoing reasons the Court should impose a sentence of 48 months.

Respectfully submitted,
CHRISTOPHER ALVITI
By his Attorney;

Dated: August 23, 2006

/s/ John H. LaChance
John H. LaChance, Esquire
BBO# 282500
600 Worcester Road
Suite 501
Framingham, MA 01702
Tel: (508) 879-5730
Fax: (508) 879-2288

**CERTIFICATE OF SERVICE**

    I, John H. LaChance, Esq., do hereby certify that I have served a copy of the foregoing upon the Government by electronically mailing a copy of the same by means of the CM / ECF system to Assistant United States Attorney David Tobin located at the Office of the United States Attorney's Office, United States District Courthouse, One Courthouse Way, Suite 9200, Boston, MA 02210 on this 23rd day of August, 2006.

                                            /s/ John LaChance
                                            John H. LaChance, Esquire