UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

_____
                                    )
**UNITED STATES OF AMERICA**        )
                                    )
        v.                          )   Crim. No. 04-CR-10248-RCL
                                    )
**CHRISTOPHER ALVITI**              )
_____)

## SECOND SENTENCING MEMORANDUM OF THE UNITED STATES

The United States of America, by its attorneys, United States Attorney Michael J. Sullivan, and Assistant U. S. Attorney David G. Tobin, hereby files with the Honorable Court a second sentencing memorandum in the above-referenced case for the use of the Court in determining an appropriate sentence for Christopher Alviti (Alviti).

### Background

On August 24, 2006, the United States filed a sentencing memorandum in the above-captioned case, in which the government asserted that Alviti's Total Offense Level ("TOL") was 33, his Criminal History Category ("CHC") was I, and his Guideline Sentencing Range ("GSR") was 135 months to 168 months.[1]  The United States argued that Alviti should be held responsible for approximately 20,000 eighty milligram OxyContin tablets that he admitted to receiving from co-defendant Richard Gould during an

---

[1] The Presentence Report ("PSR") determined that Alviti's TOL was 29 and his CHC was I resulting in a GSR of 87 months to 108 months.  The PSR findings did not take Alviti's admission as to OxyContin pill quantity int account.

interview at the U.S. Attorney's Office on July 18, 2006. The government's position was that Alviti's refusal to testify against Gould was a breach of his plea agreement with the United States and resulted in the United States being able to use Alviti's admissions against Alviti for sentencing purposes.[2]

On August 24, 2006, Alviti appeared before the Court for sentencing. Prior to the date of his sentencing, Alviti had informed the United States that he had changed his mind and was willing to testify against Gould. The Court ultimately postponed Alviti's sentencing to October 16, 2006. The United States asked that Alviti's pretrial release be revoked and that he be taken into custody to await sentencing.[3] The Court ordered that Alviti be administered a drug test prior to the Court ruling on the government's motion to revoke pretrial release. Alviti was administered a drug test by Pretrial Services Officer Basil Cronin, who reported back to the Court that Alviti tested positive for marijuana, cocaine, and opiates. The Court granted

---

[2] Alviti had signed a plea agreement with the United States, which obligated him to testify against his co-defendant Gould. prior to the date of Gould's scheduled sentencing hearing, Alviti informed the United States that he would not testify at Gould's sentencing hearing.

[3] Alviti had been on home detention with electronic monitoring since his guilty plea on June 1, 2005. According to Pretrial Services, Alviti had left his home for a number of hours the day before his sentencing without approval. Alviti informed the Court that he had unsuccessfully attempted to contact Pretrial Services for permission to leave his home in order to visit his grandmother and take care of some matters before he was sentenced.

the government's motion and revoked Alviti's pretrial release.

According to the electronic docket entry for August 24, 2006, the Court determined that Alviti's TOL was 29 [this is the same TOL determined by U.S. Probation in the PSR, and does not take into consideration the amount of OxyContin Alviti admitted to during his July 18, 2006 interview at the U.S. Attorney's Office].

### **Government's Position on Alviti's Base Offense Level**

Assuming *arguendo* that Alviti's ultimate willingness to testify against Gould cured his original breach of the plea agreement, the Court should never-the-less sentence Alviti on the basis of Alviti's July 18, 2006 admission to 20,000 eighty milligram OxyContin tablets because of his most recent breach of the plea agreement.  Alviti's use of marijuana, cocaine, and opiates while on pretrial release, which was established by the Court-ordered drug testing, constitutes a breach of Alviti's plea agreement.  Paragraph 13 of the plea agreement states, in part: "If the U.S. Attorney determines that Defendant has failed to comply with any provision of the Agreement, has violated any condition of his pretrial release, or has committed any crime, following the execution of this Agreement, the U.S. Attorney may, at his sole discretion, be released from his commitments under this Agreement in their entirety..."  Paragraph 13 further states: "Defendant understands that, should he breach any provision of this agreement, the U.S. Attorney will have the

right to use against Defendant before any grand jury, at any trial or hearing, or for sentencing purposes, any statements which may be made by him, and any information, materials, documents or objects which may be provided by him to the government subsequent to this Agreement, without any limitation."

As a result of Alviti's use of marijuana, cocaine and opiates during his pretrial release and his violation of his home confinement restrictions, Alviti is in violation of his plea agreement and the Court should sentence Alviti on the basis of his admission to approximately 20,000 eighty milligram OxyContin tablets.  This would result in a BOL of 36.

## Acceptance of Responsibility

The United States respectfully submits that Alviti should not receive a reduction in his offense level for acceptance of responsibility pursuant to U.S.S.G. § 3E1.1.  Paragraph 3 of Alviti's plea agreement states, in part: "The U.S. Attorney specifically reserves the right not to recommend a reduction under U.S.S.G. § 3E1.1 if, at any time between his execution of this Agreement and sentencing Defendant:... (g) Intentionally fails to appear in Court or violates any condition of release; [or] (h) Commits a crime."  Alviti's drug use during his pre-trail release and his violation of the terms of his home confinement is "conduct of the defendant that is inconsistent with such acceptance of responsibility."  U.S.S.G. § 3E1.1,

Application Note 3.[4]

Without a reduction for acceptance of responsibility, Alviti's TOL is 36. With a CHC of I, Alviti's GSR is 188 to 235 months. If the Court continues to maintain that Alviti's BOL is 32 [the BOL found in the PSR], Alviti's GSR, without a reduction for acceptance of responsibility, is 121 to 151 months.

### Government's Sentencing Recommendation

The United States respectfully requests that the Court impose a sentence that includes 188 months confinement. This is at the low end of the applicable GSR, as determined by the government. The United States reserves the right to be heard on sentencing at Alviti's sentencing hearing, but submits that a 188 month sentence is appropriate because of the severity of Alviti's crimes and his utter lack of remorse and appreciation for the wrongfulness of his criminal acts. Alviti violated the terms of his pretrial release by leaving his home without permission, and by using marijuana, cocaine and opiates while on pretrial release. Alviti also apparently lied to the Court when he stated that he had attempted to secure permission from Pretrial Services to leave his house. A Guideline sentence of 188 months is in the interests of justice.

---

[4] U.S.S.G. § 3E1.1, Note 3 also states,"[a] defendant who enters a guilty plea is not entitled to an adjustment under this section as a matter of right."

                          Respectfully submitted,

                          MICHAEL J. SULLIVAN
                        United States Attorney

                  By:  /s/ David G. Tobin
                       DAVID G. TOBIN
                       Assistant U.S. Attorney

Dated: September 29, 2006

Enclosure

### CERTIFICATE OF SERVICE

I hereby certify that these documents filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF).

                        /s/ David G. Tobin
                        DAVID G. TOBIN
                        Assistant United States Attorney

Date: September 29, 2006

*Main Reception: (617) 748-3100*                    *John Joseph Moakley United States Courthouse*
                                                    *1 Courthouse Way*
                                                    *Suite 9200*
                                                    *Boston, Massachusetts 02210*

                                                    August 31 2006

**by facsimile**
John H. LaChance, Esquire
600 Worcester Road, Suite 501
Framingham, MA 01701

      Re: <u>United States v. Christopher Alviti</u>

Dear Mr. LaChance:

      Please accept this letter as formal notice that the United States considers Mr. Alviti's use of controlled substances, as confirmed by the positive drug screening test conducted in the courthouse on August 24, 2006, as a breach of the Plea Agreement he entered into with the United States. Paragraph 13 of the Plea Agreement specifically states, "If the U.S. Attorney determines that Defendant has failed to comply with any provisions of this agreement, has violated any condition of his pretrial release, or has committed any crime following the execution of this Agreement, the U.S. Attorney may, at his sole option, be released from his commitments under this Agreement in their entirety by notifying Defendant, through counsel or otherwise, in writing. " Paragraph 13 also permits the United States, when the defendant has breached the Plea Agreement, to "use against the Defendant before any grand jury, at any trial or hearing, or for sentencing purposes, any statements which may be made by him, and any information, materials, documents or objects which may be provided by him to the government subsequent to this Agreement, without any limitation." As a result of Mr. Alviti's drug use and breach of the Plea Agreement, his admissions pertaining to OxyContin amounts made during an interview with the undersigned on July 18, 2006 are admissible for sentencing purposes.

      Thank you for your attention to this matter.

                                             Very truly yours,

                                             MICHAEL J. SULLIVAN
                                             United States Attorney
                       By:     _original signed_____
                                             DAVID G. TOBIN
                                             Assistant U.S. Attorney